## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**PAUL JONATHAN ENDSLEY,**

      **Petitioner,**

**vs.**

                                 **CASE NO. 5:04cv16-LAC/WCS**

**JAMES CROSBY,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

This is a petition for writ of habeas corpus filed by Paul Jonathan Endsley pursuant to 28 U.S.C. § 2254.  Doc. 1.  Petitioner challenges his conviction for driving while under the influence (DUI) manslaughter and DUI with serious bodily injury, both in violation of FLA. STAT. § 316.193.  The convictions were in the Circuit Court of the Fourteenth Judicial Circuit, in and for Bay County, Florida, case number 98-2383H.

Respondent filed an answer, doc. 12, and the state record, doc. 13, and Petitioner filed a traverse, doc. 15.  Respondent acknowledges that the petition was timely filed.  Doc. 12, p. 5.  Respondent also concedes that state court remedies have been exhausted as to each claim.

**Section 2254 Standard of Review**

Petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146 L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court precedent. Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

The law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984). Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520;

Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland,

Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or

omissions of counsel that are alleged not to have been the result of reasonable

professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim,

"counsel is strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."  466 U.S. at

690, 104 S.Ct. at 2066.  Petitioner has a heavy burden to establish the deficient

performance prong of Strickland, by showing that "no competent counsel would have

taken the action that his counsel did take."  Fugate v. Head, 261 F.3d 1206, 1217 (11th

Cir. 2001) (citation omitted).  There are no rigid requirements, or absolute duty to

investigate a particular line of defense.  *Id.*

> Indeed, "[c]onsidering the realities of the courtroom, more is not always
> better.  Stacking defenses can hurt a case.  Good advocacy requires
> 'winnowing out' some arguments, witnesses, evidence, and so on, to
> stress others."

261 F.3d at 121 (citations omitted).

For prejudice, Petitioner must show "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the

outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

Although Strickland explained the performance and prejudice prongs of analysis,

"there is no reason . . . to approach the inquiry in the same order or even to address

both components of the inquiry if the defendant makes an insufficient showing on one."

466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim

on the ground of lack of sufficient prejudice, which we expect will often be so, that

course should be followed."  *Id.*

If the state court identifies and applies the framework of Strickland in assessing

an ineffective assistance claim, its adjudication does not satisfy the "contrary to"

language of § 2254(d)(1) even if this court might have applied Strickland differently.

Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852.

To determine whether the state court's adjudication was an "unreasonable application"

of Strickland, Petitioner "must do more than show that he would have satisfied

*Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he

must show that the [state court] applied *Strickland* to the facts of his case in an

objectively unreasonable manner."  Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing*

Williams).  "[T]he most important point is that an *unreasonable* application of federal law

is different from an *incorrect* application of federal law."  Williams v. Taylor, 529 U.S. at

410, 120 S.Ct. at 1522.

**Ground One**

Petitioner contends that the trial court erred when it denied his motion to

suppress the results of the blood alcohol test.  The blood was withdrawn from him

pursuant to Florida's implied consent law, FLA. STAT. § 316.1933, et seq. (1997).

Section 316.1934(2)(c) provides that a blood alcohol level of 0.08 or higher is "prima

facie evidence that the person was under the influence of alcoholic beverages to the

extent that his or her normal faculties were impaired."  Section 316.1933(1) provides

that a law enforcement officer may use reasonable force to require a person to submit

to a blood test if the officer "has probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages, any chemical substances, or any controlled substances has caused the death or serious bodily injury of a human being . . . ."  *See*, Robertson v. State, 604 So. 2d 783, 790 n. 7 (Fla. 1992) ("the implied consent statute and its exclusionary rule apply only when blood is being taken from a person based on probable cause that the person has caused death or serious bodily injury as a result of a DUI offense specified in the statutes."). While this claim is founded upon state law,[1] the claim can be also construed as arising under the Fourth Amendment because the central issue is the existence of probable cause.

"[W]hen 'the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial.' "  Peoples v. Campbell, 377 F.3d 1208, 1224 (11th Cir. 2004), *cert. denied*, 125 S.Ct. 2963 (2005), *quoting*, Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976).  "For a claim to be fully and fairly considered by the state courts, where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court."  *Id.*, *quoting*, Tukes

---

[1] A violation of a state rule of procedure or of a state law is not itself a violation of the federal constitution.  Engle v. Isaac, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983) (procedural rule); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989) (sentencing guidelines); Carrizales v. Wainwright, 699 F.2d 1053, 1054-1055 (11th Cir. 1987) (jury instruction).

v. Dugger, 911 F.2d 508, 513-14 (11th Cir.1990).  The trial court held an evidentiary

hearing and Petitioner was represented by counsel.  Doc. 13, Ex. B (transcript of

hearing).  Petitioner has not shown that this did not provide a full and fair opportunity to

litigate his Fourth Amendment claim.  Therefore, the court should not reach the merits of

Ground One.

**Ground Two**

Petitioner contends that his attorney was ineffective for failing to object to

improper comments by the trial court during jury voir dire.  During the voir dire, as the

parties explored whether any prospective juror knew anything about the facts of the

case, one of the jurors asked "was it a teacher," apparently referring to the deceased

victim.  Doc. 13, Ex. C, R. 197-198.  The attorney for the State said it was not, that it

was a one-car crash, and the trial court added that "the two people were both

passengers."  *Id.*, R. 198.  Petitioner contends this was error because the State had to

prove, as an element of the offenses, that he was the driver.

In denying this claim, the trial court reasoned:

Defense counsel moved for a mistrial based on the comment made by the
trial judge during voir[] dire (Jury Selection R 24-26) (R 5-10).  The Court
ruled that Defendant was not prejudiced by the comment and denied the
motion.  (R 9).  A cautionary instruction was given prior to trial at the
Defendant's request.  (R 23).  Counsel renewed the motion for mistrial at
the conclusion of the evidence (R 280).  Defendant's defense at trial was
that it was an accident caused by a dropped cigarette, not that Defendant
was not driving (R 38-40).  Further, the Court's comment was to clarify
that only people who were in the vehicle were injured, not any
pedestrians.  (Jury Selection R 24-26).  Defense counsel's failure to object
during jury selection did not prejudice Defendant to the extent that the
outcome of the trial would have been different.

Doc. 13, Ex. F, R. 79.  Respondent suggests, without explanation, that this is a correct ruling.

Though counsel did not object to the jury panel at the time the comment was made, he moved for a mistrial before trial started.  Doc. 13, Ex. C (trial transcript), p. 5. Counsel pointed out that the State had to prove that Defendant was driving, and argued that it was "just hard to unring that bell."  *Id.*, p. 6.  Counsel speculated that the trial court's comment occurred because a few minutes before jury selection began, Petitioner had entered a plea to an additional charge of driving on a suspended license. *Id.*  The trial court asked counsel for Petitioner to explain what prejudice would flow from the comment, other than the fact that this was an element that the State had to prove. *Id.*, p. 7.  Counsel argued that if the State was right about this one element, perhaps the jury would infer that the State was right about other elements.  *Id.*, p. 8.  The court pointed out that counsel could have made a contemporaneous objection at the bench. *Id.*  The court said that had such an objection been made, "we could have gotten the other jury panel that was next door."  *Id.*  Counsel for Petitioner admitted that he was not certain that there would be a "real fight" about whether Petitioner was the driver.  *Id.*, pp. 8-9.  The court denied the motion, finding no prejudice because "that does not appear to be your defense or your primary issue here . . . ."  *Id.*, p. 9.

The prejudice that might have been caused by the court's comment is directly proportional to the extent to which Petitioner planned, prior to the comment, to assert that there was insufficient evidence that he was the driver.  As the State pointed out when the mistrial motion was made, the State had an eye witness (Carl David Horton, the surviving passenger) that Petitioner was the driver.  *Id.*, p. 6.  The State said it had

DNA evidence that Petitioner was the driver.  *Id.*, p. 7.  The State also noted that the eye witness was also expected to testify that Petitioner dropped a cigarette as he was driving, leaned down to pick it up, and that was how the accident occurred.  *Id.*

In opening statement, the State asserted that it had taken samples of blood on the driver's seat and DNA from Petitioner, and the DNA matched.  *Id.*, p. 34.  At trial, the State presented DNA evidence that the blood on the driver's seat was Petitioner's blood.  *Id.*, p. 149.  Horton testified that Petitioner was driving from the time he (Horton) was picked up until the time when the accident occurred.  *Id.*, pp. 53-57.  Finally, the feet of the deceased passenger, Judy Quick, were "trapped under the dash board on the passenger side of the car," evidence that she was not driving when the crash occurred.[2]  Doc. 13, Ex. F (Rule 3.850 order), R. 80.

In summary, there was no evidence to support a defense that Petitioner was not driving the car.  All of the evidence supported the conclusion that he was the driver.  Petitioner has not shown either attorney error or prejudice to the outcome for failing to object.  Consequently, he has not shown that the state court's adjudication of the merits of this federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

_____

[2] Trooper Donnie Chapman, the investigating officer, testified at the suppression hearing that Quick was dead when he arrived.  Doc. 13, Ex. B, R. 153.  He said: "From the impact of the crash and where the car had been crushed, her feet were trapped under the dash on the passenger side and her body had been thrown across and was hanging out the window, on the driver's side."  *Id.*

**Ground Three**

Petitioner contends his attorney was ineffective because he conceded his guilt

without his knowledge or consent.  In opening statement, counsel argued:

> Judy Quick [the deceased passenger], *she lit the cigarette and handed it*
> *to Paul [Petitioner] and Paul dropped it.  That's when he jerked the wheel*
> *a little bit*. . . .
>
> I think when you hear all the evidence in this case you will have to
> conclude that this crash was not caused by Paul Endsley's operation of a
> motor vehicle under the influence of an alcoholic beverage or with an
> unlawful blood content, it was caused by a dropped cigarette. . . .
>
> I expect when you hear all of the evidence *you will decide that probably*
> *Mr. Endsley is guilty of D.U.I. for driving this vehicle while under the*
> *influence.  That's what the evidence will show* . . . .  [B]ut I don't think you
> will be able to find that he caused this death or contributed to the cause of
> this death of his girlfriend he was trying to get back together with or he
> caused or contributed to the cause of or serious bodily injury to his friend.
> So, we expect to you [sic] come back if you find him guilty of anything it
> will probably be for D.U.I.

Doc. 13, Ex. C, pp. 38-39 (emphasis added to statements at issue).  Counsel argued

that when Petitioner tried to pick up the cigarette, the car went off the road and the

accident occurred when he tried to get it back onto the road.  He argued that this kind of

accident could happen to anyone, drunk or sober.  *Id.*, p. 229.

In closing argument, counsel for Petitioner told the jury "I pretty much give up on

did the defendant drive."  *Id.*, p. 226.  Counsel also argued:

> When Endsley was asked, Paul Endsley was asked by anybody at the
> scene or the hospital if he had anything to drink, I drank half a case of
> beer.  When did he drink that half a case nobody bothered to ask that.
> The evidence would show that he probably did before he even picked up
> Horton.

*Id.*, p. 230.  Counsel further argued that Petitioner drank these 12 beers before he

picked up Horton, between 6:00 p.m. and 8:00 p.m., and then drove around without

accident or incident until about midnight, drinking only about one-third of a quart of beer after picking up Horton.  *Id.*, pp. 227-231.

In denying this claim, the trial court found that counsel was not ineffective for conceding that Petitioner was driving the car.  Doc. 13, Ex. F, R. 80.  The court reasoned that there was overwhelming evidence that Petitioner was the driver, and the defense was that Petitioner was not negligent because the accident occurred due to a dropped cigarette and not as a result of Petitioner's driving.  *Id.*

These were sound reasons to deny the Rule 3.850 claim.  The third element of the offense of DUI manslaughter was a causal element, "that as a result [of impairment] the defendant caused or contributed to the cause of the death of Judy Quick."  Doc. 13, Ex. C, p. 266.  Counsel made a tactical decision to establish a defense with respect to the causal element rather than the first element, that Petitioner was the driver.  He argued that the accident was not caused by the effects of alcohol, but due to a mishap (the dropped cigarette), an accident that could happen to anyone, impaired or sober. The causal connection defense presupposed that Petitioner was the driver.  Had counsel attempted to persuade the jury that Petitioner was not the driver, given the evidence, he would have lost credibility with the jury.

Further, it was not attorney error for Petitioner's lawyer to concede that Petitioner had said (at the time of the accident) that he had had about 12 beers.  Counsel's argument was that the beer had been consumed before 6:00 p.m. or, at the latest, 8:00 p.m., and the accident did not occur until four hours later.

Thus, the claim of ineffective assistance of counsel is without merit.  As a consequence, Petitioner has not shown that the state court's adjudication of the merits

of this federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Four**

Petitioner contends that his attorney was ineffective for failing to impeach a witness for the State at the suppression hearing.  He argues that in the Traffic Crash Report of September 17, 1998, the investigating officer, Trooper Chapman, listed Judy Quick as the driver and Petitioner as a passenger.  He also points out that Sergeant Hart and Corporal Sorrells advised the Medical Examiner's office that the initial report indicated that Ms. Quick was driving.  He argues that Chapman, who testified at the hearing that Petitioner was the driver, could have been impeached by this evidence.  He notes that the law enforcement officers took statements from Petitioner at the hospital and did not arrest him, indicating a lack of probable cause at that time.

Petitioner acknowledges that Trooper Chapman relied upon a statement from Horton that Petitioner was the driver.  He argues that Horton's statement was plainly unreliable as he had suffered a significant loss of blood because his legs were nearly amputated.  Dr. Tracy, the attending emergency room physician, testified at the hearing that Horton was in grade III hemorrhagic shock.  He notes that in a statement to Corporal Sorrells, Horton said he did not remember talking to anyone that night.

Finally, Petitioner faults counsel for not calling paramedic Donnie Brock to testify that Petitioner was sitting in a ditch, rather than walking around and leaning on an ambulance.  He notes that while Chapman testified at the hearing that Petitioner was "leaning on the ambulance," he also said he did not believe the paramedics were there.

The trial court rejected this claim, reasoning:

[H]aving reviewed the FHP Crash Report and Updated Crash Report, the depositions of Paramedic Donnie Brock and Carl Horton, Defendant's claims in points one through three do not amount to ineffective assistance of counsel.  At the scene of the accident, Defendant told Trooper Chapman that he was not the driver but instead that Judy Quick (deceased) was the driver.  However, evidence and witnesses indicated otherwise.  For instance, Judy Quick's feet were trapped under the dash board of the passenger side of the car.  At the suppression hearing, when Defendant was asked who was driving, he stated that he did not know. (Suppression Hearing R 21).  As for Defendant's claims regarding Carl Horton's testimony, Carl Horton still gave the same testimony several months after the accident in a deposition on April 5, 1999.  *See Deposition Carl Horton, Jr.*  Paramedic Donnie Brock's deposition testimony did not contradict Trooper Donnie Chapman's testimony at the suppression hearing.  *See Deposition Donnie Brock and Suppression Hearing* (R 2-24). It is clear that the paramedic did not arrive until some time after Trooper Chapman was on the scene and had a chance to observe Defendant walking around.  Defendant also misconstrues Trooper Chapman's testimony at the suppression hearing. . . .

Doc. 13, Ex. F, R. 80.

Petitioner has not pointed to evidence that undercuts the trial court's reasoning.

That Trooper Chapman's initial report listed Quick as the driver is an unimportant

inconsistency as it was Petitioner who told Chapman that she was driving.  Petitioner

testified at the suppression hearing that he told Chapman that Quick was driving, but

said he "wasn't sure at the time."  Doc. 13, Ex. B, R. 164.  On cross examination,

Petitioner said that at the time of the accident, he did not know who was driving.  *Id.*, R.

168.  That Chapman had listed Quick on the initial report as the driver did not impeach

Chapman's credibility.  Instead, given the fact that Quick's legs were trapped under the

dash in the front passenger seat, it served to prove that Petitioner was the driver, knew

he was the driver, and tried to cover that up by telling Chapman that Quick was the

driver, all of which was evidence that Petitioner was the driver.

The trial court's reasoning about Horton's testimony likewise is sound.  Though Horton was gravely injured, Chapman said that Horton told him that Petitioner had been driving.  Doc. 13, Ex. B, R. 153.  Horton was conscious enough to crawl out of the car.  Doc. 13, Ex. B, R. 152.  While it is possible that Horton was so injured that he could not have told Chapman who was driving when asked at the accident scene, Horton gave the same testimony in a deposition months later.  The deposition is not before the court, but Petitioner has not shown that Horton's deposition testimony could not logically support a conclusion that Horton remembered, months later, what he told Chapman on the night of the accident.

The trial court's reasoning concerning the failure to call paramedic Donnie Brock has also not been shown by Petitioner to be incorrect.  It would not be unusual for a law enforcement officer to arrive at a motor vehicle accident scene before the ambulance and paramedics arrive, and Trooper Chapman would have had a chance to observe Petitioner's movements, or lack thereof, before Paramedic Brock arrived.  For all of these reasons, Petitioner has not shown that the state court's adjudication of the merits of this federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Five**

Petitioner argues that his attorney was ineffective for failing to properly object to hearsay testimony and to effectively cross examine the State's witness.  The witness in question was Dr. George Tracy, the emergency room attending physician.  Dr. Tracy testified that Petitioner told him he had consumed half a case of beer, and he believed

Petitioner was intoxicated based upon Petitioner's blood alcohol level.  He also testified

to observations favorable to Petitioner, that Petitioner was alert, coherent, and had no

slurred speech.  Petitioner contends that his attorney should have been able to exclude

the testimony as to his admission that he drank half a case of beer because the time of

consumption was not established.  He reasons that if the time of consumption was

unknown, the statements would not be admissible under FLA. STAT. § 90.803(4)

because not relevant to medical diagnosis or treatment.  He reasons that this default

improperly opened the door to allow Dr. Tracy to testify to Petitioner's blood alcohol

level.

The trial court rejected this claim, finding that Petitioner had not set forth a legal

basis for asserting that the testimony was hearsay and inadmissible.  Doc. 13, Ex. F, R.

80.  The court also noted that Petitioner's attorney did object to this testimony, but was

unsuccessful.  *Id.*

Section 90.803(4) provides that even though the declarant is available to testify,

statements made for the purpose of medical diagnosis or treatment are admissible:

> Statements made for purposes of medical diagnosis or treatment by a
> person seeking the diagnosis or treatment, or made by an individual who
> has knowledge of the facts and is legally responsible for the person who is
> unable to communicate the facts, which statements describe medical
> history, past or present symptoms, pain, or sensations, or the inceptions
> or general character of the cause or external source thereof, insofar as
> reasonably pertinent to diagnosis or treatment.

FLA. STAT. § 90.803(4).  The amount of alcohol consumed by Petitioner was relevant to

diagnosis and treatment of his injuries.  Petitioner had a closed head injury, with

lacerations to his ear and scalp.  Doc. 1, attached deposition of Dr. George Tracy, p. 2.

The amount of alcohol in Petitioner's system would be relevant to diagnosis and treatment issues such as shock, concussion, internal bleeding, and anesthesia.

But even if the statement was not needed for medical diagnosis or treatment, the statement was admissible because it was a "party's own statement" and offered against the party. FLA. STAT. § 90.803(18)(a). Bryant v. State, 810 So.2d 1003, 1003-1004 (Fla. 4th DCA 2002); Dias v. State, 890 So.2d 1254 (Fla. 4th DCA 2005). For these reasons, attorney error and prejudice to the outcome has not been shown, and the trial court's ruling is not an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States. § 2254(d)(1).

**Ground Six**

Petitioner asserts that his attorney was ineffective for failing to object to a jury instruction that allowed the jury to rely upon the statutory presumption of impairment. Petitioner's trial began on August 30, 1999. Doc. 13, Ex. C. He contends that on January 22, 1999, the First District Court of Appeal had held that the State could not rely upon the statutory presumption of impairment because the implementing regulations were defective. State v. Miles, 732 So. 2d 350 (Fla. 1st DCA 1999), *approved in part, quash in part*, 775 So. 2d 950 (2000).

The trial court rejected this claim, ruling that State v. Miles, 732 So. 2d 350 (Fla. 1st DCA 1999) allowed

legislatively created presumptions of impairment in prosecutions for DUI after the admissibility of the blood alcohol evidence had been determined in accordance with common law principles, which requires the prosecution to show that the test was reliable, the test was performed by a qualified operator with proper equipment, and that the expert testimony was presented concerning the meaning of the test.

Doc. 13, Ex. F, R. 80-81.  The court found that these requisites had been met at trial.

The court also held that Florida Supreme Court's ruling in the same case was not

available to Petitioner because it was decided until after his trial, and later, by force of

Curtis v. State, 805 So. 2d 995 (Fla. 1st DCA 2001), could not be applied retroactively

to Petitioner in his post-conviction proceedings.  *Id.*, R. 81.

As noted previously, FLA. STAT. § 316.1934(2)(c) creates a presumption of

impairment if the blood alcohol level is 0.08 or higher.  At the time of Petitioner's trial,

State v. Miles, 732 So. 2d 350 (Fla. 1st DCA 1999) affirmed the trial court's ruling that

the State was *not* entitled to rely upon the presumptions of intoxication provided by FLA.

STAT. § 316.1934 due to deficiencies in the Florida Department of Law Enforcement

regulations, FLA. ADMIN. CODE § 11D-8.012.  Those regulations had failed to specify

standards for the collection, storage, and transportation of blood samples.  The court

modified the trial court's results, however, finding that the State *is* entitled to the

presumptions of intoxication provided by FLA. STAT. § 316.1934 if it establishes the

predicate for the admissibility of the blood alcohol test using the common law standards

set forth in Robertson v. State, 604 So. 2d 783 (Fla. 1992).  Those standards are that:

> (1) the test was reliable, (2) the test was performed by a qualified operator
> with the proper equipment and (3) expert testimony was presented
> concerning the meaning of the test.

732 So. 2d at 353, *quoting*, Robertson, 604 So. 2d at 789.  The court also noted that

having established these predicates, the State also had to "withstand[] any and all

defense rebuttal" so that the evidence is found to be scientifically reliable and

admissible.  732 So. 2d at 353.  This was the law at the time of Petitioner's trial, and

was the law as noted in the trial court's order denying Petitioner's Rule 3.850 motion.

Some months after Petitioner's trial, the Florida Supreme Court disagreed and reversed in part.  The court held that the absence of regulations governing the collection, storage, and transportation of blood samples meant that the State could not rely upon the statutory presumptions.  775 So. 2d at 956-957.  The court also said that if the procedure outlined in Robertson was satisfied, the results of blood testing would be admissible, but the presumptions still would not be available.  *Id.*, at 957.

When the First District Court of Appeal decided State v. Miles on January 27, 1999, it certified the central question to the Florida Supreme Court.  The Florida Supreme Court granted review on August 24, 1999, just six days before Petitioner's trial commenced.  740 So. 2d 529 (Table).  The Supreme Court decided State v. Miles on November 30, 2000.  Petitioner's direct appeal was not determined until December 4, 2000.  Doc. 13, Ex. E.  The Supreme Court's decision in State v. Miles would have been applied to Petitioner's pending appeal had the issue been preserved and argued at the appellate level.  Leveritt v. State, 896 So. 2d 704, 705 n. 2 (Fla. 2005) (citing Smith v. State, 598 So. 2d 1063, 1066 (Fla. 1992), holding that a decision announcing a new rule or applying old law to new facts applies to a pending appeal).  Thus, while normally counsel cannot be faulted for failing to anticipate evolutions in the law,[3] this case is arguably different, assuming that Petitioner could only have been convicted based upon the presumption of impairment in FLA. STAT. § 316.1934(2)(c).

---

[3] *See*, Black v. United States, 373 F.3d 1140, 1144 (11th Cir. 2004), *cert. denied*, 125 S.Ct. 942 (2005) ("If the legal principle is unsettled, however, counsel will not have rendered deficient performance for an error in judgment.").

It is this latter assumption, however, that is unavailable to Petitioner.  As

Robertson noted some years before Petitioner's trial,

> Florida law authorizes two alternative theories for DUI offenses: actual
> impairment, or a blood alcohol level of 0.10 or higher.  § 316.193, Fla.Stat.
> (1987).  The second of these is a strict-liability theory, since the fact of
> operating a motor vehicle with a blood-alcohol level of 0.10 or higher is an
> offense even if impairment cannot be proven.  There is some redundancy
> in the statute, however, since impairment is presumed if the blood-alcohol
> content is 0.10 or higher.  § 316.1934(2), Fla.Stat. (1987).  In any event,
> the presumption of impairment created by this last statute is a moot
> concern if the state proves beyond a reasonable doubt that the defendant
> operated a motor vehicle with an unlawful blood-alcohol level.  Here, the
> state met this burden.

Robertson v. State, 604 So.2d 783, 792, n. 14 (Fla. 1992).

The statute has since been amended to lower the blood alcohol threshold to

0.08, but the alternative routes to conviction for DUI manslaughter still exist.  In the case

at bar, Petitioner's jury was charged as to both theories.  As the second element of the

offense, the court instructed:

> Number two, while driving or while in actual physical control of the vehicle
> the defendant was under the influence of alcoholic beverages to the extent
> that his normal faculties were impaired *or* had a blood alcohol level of .08
> or higher.

Doc. 13, Ex. C, p. 266 (emphasis added).

The court also instructed as to the presumption of impairment:

> Now, if you find from the evidence that the defendant had a blood alcohol
> level of .08 or more that evidence would be sufficient by itself to establish
> that the defendant was under the influence of alcohol to the extent that his
> normal faculties were impaired.  However, such evidence may be
> contradicted or rebutted by other evidence.  This presumption may be
> considered along with any other evidence presented in deciding whether
> the defendant was under the influence of alcoholic beverages to the extent
> that his normal faculty was impaired.

*Id.*, p. 267.

This presumption was relevant to the first alternative method of proving the

offense.  It was irrelevant to proof of the second element.  As explained in <u>Cardenas v.

State</u>, 867 So. 2d 384 (Fla. 2004):

> The statute criminalizing DUI currently provides that a defendant can be
> charged and convicted under three alternative theories:
>
> > (1) A person is guilty of the offense of driving under the
> > influence and is subject to punishment as provided in
> > subsection (2) if the person is driving or in actual physical
> > control of a vehicle within this state and:
> >
> > > (a) The person is under the influence of
> > > alcoholic beverages, any chemical substance
> > > set forth in s. 877.111, or any substance
> > > controlled under chapter 893, when affected to
> > > the extent that the person's normal faculties
> > > are impaired;
> > >
> > > (b) The person has a blood-alcohol level of
> > > 0.08 or more grams of alcohol per 100
> > > milliliters of blood; or
> > >
> > > (c) The person has a breath-alcohol level of .08
> > > or more grams of alcohol per 210 liters of
> > > breath.
>
> § 316.193(1), Fla. Stat. (2003). Section 327.35, Florida Statutes, (1995),
> the BUI [Boating Under the Influence] statute under which Cardenas was
> convicted, is identical to the DUI statute in regard to the alternative
> elements of impairment and unlawful blood-or breath-alcohol level.  Thus,
> subsection (1)(a) requires proof of impairment, *while the strict liability
> approach of subsections (1)(b) and (1)(c) requires proof of driving with an
> unlawful blood-or breath-alcohol level, otherwise known as DUBAL*.

867 So.2d at 389-390 (footnote omitted, emphasis added).

<u>Cardenas</u> further explained:

> We recognized in *Robertson* that the availability of the DUBAL alternative
> makes the presumption of impairment "a moot concern if the state proves
> beyond a reasonable doubt that the defendant operated a motor vehicle
> with an unlawful blood-alcohol level."  604 So.2d at 792 n. 14.

\*                    \*                    \*

When the jury is instructed on DUBAL after the State has introduced blood-alcohol evidence under the three-prong test of *Bender*,[4] as occurred in each of these cases, the jury may find the defendant guilty based on the same evidence that supports the presumption of impairment without considering whether the defendant was under the influence of alcohol to the extent that his or her normal faculties were impaired.

\*                    \*                    \*

As we observed in *State v. Rolle*, 560 So.2d 1154, 1156 (Fla.1990), in which we upheld the presumption of impairment instruction against a constitutional challenge,

> [t]o the extent the challenged instruction allowed the jury to substitute proof of a blood-alcohol level of 0.10 percent or higher for proof of impairment it correctly stated the law. Essentially, section 316.193 allows proof of a blood-alcohol level of 0.10 percent or higher to be substituted for proof of impairment--not as an unconstitutional presumption, but as an *alternate element of the offense*.  Id. at 1156.

This statement applies equally to the current .08 percent threshold for DUBAL and the presumption of impairment.

867 So.2d at 391 (emphasis added).

The three pronged test of <u>Bender</u> is the common law test noted in <u>Robertson</u> and by the trial court when it ruled on Petitioner's Rule 3.850 motion.  This permits the results of a blood alcohol test into evidence if there is a showing that the test is reliable, that the operator was qualified, and that the meaning of the test results have been explained by expert testimony.  <u>Robertson</u>, 604 So. 2d at 790.

In summary, even if the results of the blood alcohol test were not properly admitted so as to give rise to the presumption of impairment pursuant to FLA. STAT. §

---

[4] <u>State v. Bender</u>, 382 So. 2d 697 (Fla. 1980).

316.1934(2)(c), if the results were properly admitted pursuant to common law principles, the jury was permitted to convict using the alternative element of the offense (DUBAL), that Petitioner's blood alcohol level was 0.08 or higher.

The results of the blood alcohol test in this case were properly admitted pursuant to the principles established in Bender. At trial, the State called John Keeton as a witness. Doc. 13, Ex. C, p. 86. Keeton testified that he is a registered nurse and trained to withdraw blood. *Id.* Keeton said that he had already started an I.V. for Petitioner as standard trauma protocol in the emergency room, and he used that I.V. insertion to draw the blood. *Id.*, pp. 88, 92. He drew blood into two vials with gray tops. *Id.*, p. 88. He then placed his initials on the vials and Petitioner's name. *Id.*, p. 89. The tubes or vials were self-sealing.[5] *Id.*

The two vials were then collected by Lieutenant Joe Tucker of the Highway patrol (on September 17, 1998) and placed in a refrigerated evidence locker and logged in. *Id.*, pp. 96-98. The containers were delivered to the Florida Department of Law Enforcement on September 22, 1998. *Id.*, p. 98.

The State also called Dale Livingston, a toxicologist with the Florida Department of Law Enforcement, as a witness. *Id.*, p. 100. Livingston was assigned to the section dealing with blood alcohol analysis, and had done "thousands of blood alcohol determinations." *Id.* Livingston testified that blood samples come in, are marked, and

---

[5] He used hypocleanse and betadine to prepare Petitioner's arm for the insertion of the I.V. *Id.*, p. 89. If hypocleanse and betadine contained alcohol, this would have failed to comply with FLA. ADMIN. CODE § 11D-8.012(2). State v. Miles, 732 So. 2d at 352. However, compliance with the regulation was unnecessary as the results were admissible by common law standards.

are stored in a refrigerated vault.  *Id.*, p. 104.  The blood samples in this case were

dated September 22, 1998, from Pensacola, and Livingston first began work on them on

October 7, 1998.  *Id.*, p. 105.  He said that the samples were sealed when he opened

them in the laboratory, and there was no evidence that the seal had been tampered

with.  *Id.*, p. 111.  The vials that were in the "kit" submitted to Livingston for analysis had

gray tops.  *Id.*, p. 112.  Livingston said that gray top tubes indicate that the tubes contain

sodium fluoride as a preservative, an anticoagulant to prevent clotting.  *Id.*, pp. 112-113.

The blood samples were not clotted.  *Id.*, p. 113.  He described the methods of analysis

that he used, gas chromatography.  *Id.*, pp. 105-109.

      For these reasons, neither attorney error nor prejudice to the outcome has been

shown.  Ground Six is without merit.

**Recommendation**

      Accordingly, it is **RECOMMENDED** that petition for writ of habeas corpus filed by

Paul Jonathan Endsley pursuant to 28 U.S.C. § 2254, challenging his convictions for

driving while under the influence (DUI) manslaughter and DUI with serious bodily injury

in the Circuit Court of the Fourteenth Judicial Circuit, in and for Bay County, Florida,

case number 98-2383H, be **DENIED WITH PREJUDICE**.

      **IN CHAMBERS** at Tallahassee, Florida, on October 3, 2005.


                **s/    William C. Sherrill, Jr.**
                **WILLIAM C. SHERRILL, JR.**
                **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**